UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GINA NOEL CONTI,<br><br>              Plaintiff,<br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>              Defendant. | Civil Action No. 22-06615 (JXN) (LDW)<br><br>**OPINION** |

**NEALS**, District Judge:

This matter comes before the Court on Defendant Bank of America, N.A.'s ("Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 27). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391(b)(2), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion for summary judgment (ECF No. 27) is **GRANTED**, and the Complaint (ECF No. 1) is **DISMISSED with prejudice**.

I.     **BACKGROUND AND PROCEDURAL HISTORY**

On or about June 15, 2022, Plaintiff purchased a modem and related internet service from Infinite Internet Corporation ("Infinite").[1] (Declaration of Shan P. Massand ("Massand Decl."), Ex. E, ECF No. 27-7 at 57:19-24).[2] On June 22, 2022, Plaintiff received the modem, but it stopped running after five minutes. (*Id.* at 62:4-10, 67:4-10). Plaintiff contacted Infinite because she was

---

[1] During her deposition, Plaintiff testified that she purchased the modem and internet services from FireWifi, but FireWifi "passed" her off to Infinite. (Massand Decl., Ex. E, ECF 27-7 at 57:25 to 59:1).
[2] For sake of clarity, when citing the parties' briefs and supporting documents, the Court cites to the page number listed in the ECF header. If there is no page number listed in the ECF header, the Court cites to the page number listed in the respective document.

experiencing technical difficulties. (*Id.* at 67:11-14). The Infinite employee, Kyle, informed Plaintiff that Infinite would send a replacement modem and that she would need to return the first modem. (*Id.* at 67:15-68:8). Plaintiff asked if she would receive a shipping label and "[t]hey said no, it's at [her] own expense." (*Id.* at 68:8-10). After Plaintiff asked if she "could get a shipping label because it [wa]s not [her] fault[,]" Kyle "spoke to his boss and they said they [we]re going to send out a shipping label." (*Id.* at 68:10-16). A week later, Plaintiff called Infinite back and Kyle informed her that the shipping label had not "been approved yet." (*Id.* at 68:16-18). Kyle told Plaintiff that Infinite would send her another modem. (*Id.* at 68:19-20).

When Plaintiff received the second modem, she testified "it sounded like something was broken in it" and when she went to turn the modem on, "it did[] [not] work at all." (*Id.* at 66:15:19). Plaintiff called Infinite again for support and another employee, Landon, told her to send the modem back and they would fix it and send it back. (*Id.* at 74:15-19). Plaintiff testified that Infinite was going to charge her to send it back. (*Id.* at 74:21-23).

On or about July 11, 2022, Plaintiff charged a $588.48 wireless internet router/modem ("Disputed Charge") from Infinite on her Bank of America Credit Card ("Credit Card"). (Defendant's Rule 56.1 Statement of Material Facts Not in Dispute (ECF No. 27-17) ("DSOF")[3] ¶¶ 2-3; Plaintiff's Response to Defendant's Rule 56.1(a) Statement of Material Facts Not in Dispute ("PRSOF") ¶¶ 2-3).

On or about July 15, 2022, Plaintiff initiated a billing dispute with Defendant for the Disputed Charge. (DSOF ¶ 4; PRSOF ¶ 4). In a July 19, 2022 letter, Defendant informed Plaintiff that it was working on her claim and asked her to "send any information that [she] may have to support [her] dispute in the next 10 days." (Declaration of Stacey Ruiz ("Ruiz Decl."), Ex. 4, ECF

---

[3] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.

2

No. 27-12 at 1). Thereafter, on August 4, 2022, Defendant sent Plaintiff a letter advising her that it was temporarily crediting her account for the Disputed Charge while it worked with Infinite to address the dispute. (DSOF ¶ 6; PRSOF ¶ 6).

Thereafter, Infinite submitted documentation to Defendant in support of its position that (i) Plaintiff had failed to return the modems in accordance with the company's fourteen-day return policy, (ii) Plaintiff was responsible for the shipping fees, and (iii) the modems were in "good working order" when they were sent to Plaintiff. (DSOF ¶¶ 7-10; *see generally* Ruiz Decl., Ex. 3, ECF No. 27-11).

In a September 5, 2022 letter, Defendant advised Plaintiff that (i) Infinite had responded to the dispute, (ii) Plaintiff did not need to provide any additional information or take any action at that time, (iii) Defendant was reviewing the information provided by Infinite, (iv) the credit for the Disputed Charge would remain on Plaintiff's account while Defendant completed its investigation, (iv) Defendant may ask Plaintiff to provide additional information to support its claim at a later time, and (v) "if [Defendant] . . . determine[s] that the transaction(s) is valid, [Defendant will] notify [Plaintiff] of [its] decision and may reverse any credit(s) previously issued on [Plaintiff's] account." (Ruiz Decl., Ex. 6, ECF No. 27-14).

In a letter dated September 23, 2022, Defendant advised Plaintiff that "[a]dditional information [wa]s needed to continue [its] investigation" of the Disputed Charge. (Ruiz Decl., Ex. 7, ECF No. 27-15 at 1). The letter also advised Plaintiff to review, sign, and return a notice indicating she was "not satisfied with the quality of the goods or services [she] received from IN INFINITE INTERNET" and enclose the requested documentation. (*Id.* at 3). Further, the letter indicated:

> **If this information is not received by October 03, 2022, we'll close our investigation(s)** as we will not have the necessary information we need to pursue

3

> your dispute(s) further. **If this occurs, your account will be rebilled and the adjustment(s) will appear on your monthly statement.** As a result, the balance will be owed in accordance with your Credit Card Agreement.

(*Id.*). Plaintiff testified she did not "remember getting this letter" and stated "[i]f it was sent in the mail it's very possible [she] didn't" get the letter because "we don't always get everything." (Massand Decl., Ex. E, ECF No. 27-7 at 123:10-15).

Thereafter, in an October 4, 2022 letter, Defendant advised Plaintiff it had completed its investigation in regards to the Disputed Charge. (Ruiz Decl., Ex. 8, ECF No. 27-16 at 1). The letter stated that Defendant had "thoroughly reviewed the details of [Plaintiff's] dispute, and based on the information [it] received, [it was] unable to pursue [her] dispute(s) further." (*Id.*). Defendant indicated that it had not "receive[d] documentation describing how the merchandise was defective," and the Disputed Charge would be rebilled on her monthly statement. (*Id.* at 1-2). Defendant further stated: "At this time, we consider your dispute(s) resolved and the balance is owed as stated in your Credit Card Agreement." (*Id.* at 2).

On November 15, 2022, Plaintiff filed a Complaint under the Fair Credit Billing Act, 15 U.S.C. § 1666 *et seq.* ("FCBA"), alleging that Defendant failed to conduct a reasonable investigation of the Disputed Charge upon receiving notice of the billing error. (ECF No. 1). On January 26, 2024, Defendant moved for summary judgment. (ECF No. 27) ("Br."). Plaintiff opposed the motion (ECF No. 28) ("Opp'n"), to which Defendant replied (ECF No. 29) ("Reply"). This matter is now ripe for consideration.

## II. LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing

4

law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. DISCUSSION

In the Complaint, Plaintiff raises a single claim under the FCBA and Federal Regulation Z. The FCBA, enforced through the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, and implemented through Federal Regulation Z, 12 C.F.R. § 1026, "'requires creditors to investigate and correct billing errors.'" *See Alves v. Verizon*, No. 08-3196, 2010 WL 2989988, at *7 (D.N.J. July 27, 2010) (quoting *Dimedio v. HSBC Bank*, No. 08-5521, 2009 WL 2413669, at *2 (D.N.J. Aug. 4, 2009)). "Under the FCBA, a consumer who believes that there is a billing error on his

5

statement has sixty days, from receiving the statement, to notify the creditor of that error." *Rigby v. FIA Card Servs., N.A.*, 490 F. App'x 230, 234 (11th Cir. 2012) (citing 15 U.S.C. § 1666(a); 12 C.F.R. § 226.13(b)). "If the consumer gives proper and timely notice, then the creditor is required to provide, within thirty days, written acknowledgement that it received the notice; and, within ninety days, or two complete billing cycles, whichever is shorter, the creditor must investigate the matter, either correcting the billing error or sending a written explanation of why the original statement was correct." *Id.* (citing 15 U.S.C. § 1666(a); 12 C.F.R. § 226.13(c), (e), (f)).

Thus, "[i]n order to state a claim under § 1666 [of the FCBA], the plaintiff must allege: (1) the existence of a billing error; (2) plaintiff's timely notification of the billing error; *and* (3) failure of the card issuer to comply with the procedural requirements of Section 1666." *Id.* at 235 (emphasis added) (citing *Beaumont v. Citibank (S.D.) N.A.*, No. 01-3393, 2002 WL 483431, at *3 (S.D.N.Y. Mar. 28, 2002)). The parties do not dispute that Plaintiff's notification of a billing error was timely. Rather, the parties dispute whether a "billing error" existed and whether Defendant complied with the procedural requirements of the FCBA. (*See* Br. at 8-14; Opp'n at 9-17). The Court will address each issue in turn.

### A. Whether a Billing Error Occurred

The FCBA enumerates seven examples of billing errors. 15 U.S.C. § 1666(b). Plaintiff asserts that the billing error in this case fits the following definition: "A reflection on a statement of goods or services not accepted by the obligor or his designee or not delivered to the obligor or his designee in accordance with the agreement made at the time of a transaction." *Id.* at § 1666(b)(3); Federal Regulation Z further elucidates this definition: "A reflection on or with a periodic statement of an extension of credit for property or services not accepted by the consumer or the consumer's designee, or not delivered to the consumer or the consumer's designee as

6

agreed." 12 C.F.R. § 1206.13(a)(3). However, "Section 1026.13(a)(3) does not apply to a dispute relating to the quality of property or services that the consumer *accepts*." 12 C.F.R. § 226.13, Supp. I cmt. 13(a)(3)(1)(ii) (effective May 14, 2024) (emphasis added). "Whether acceptance occurred is determined by state or other applicable law." *Id.*

Plaintiff argues a billing error occurred because she did not accept the modems from Infinite. (Opp'n at 10-14). Pursuant to New Jersey Statute Annotated Section 12A:2-606(1)[4]:

> Acceptance of goods occurs when the buyer[,]
>
>> (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
>>
>> (b) fails to make an effective rejection (subsection (1) of 12A:2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
>>
>> (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." N.J. Stat. Ann. § 12A:2-602(1).

Plaintiff argues she "properly rejected each modem within a reasonable time after their delivery and therefore never accepted the modems or internet service." (Opp'n at 12-13). In contrast, Defendant argues Plaintiff's dispute amounts to issues with the quality of the modems she received. (Br. at 10; Reply at 1-3). The Court finds there are genuine disputes of material facts as to whether Plaintiff accepted the goods or effectively rejected the modems. Plaintiff testified that she called Infinite after she set up the modem because it stopped working after five

---

[4] The parties' briefs assume New Jersey law controls. (*See* Br.; Opp'n). "Where parties' briefs assume that a particular forum's law controls, such implied consent . . . is sufficient to establish choice of law." *Marino v. Brighton Gardens of Mountainside*, 697 F. Supp. 3d 224, 229 (D.N.J. 2023) (collecting cases) (cleaned up); *see also Dejewski v. Nat'l Beverage Corp.*, No. 19-14532, 2024 WL 2744981, at *3 n.10 (D.N.J. May 29, 2024). Accordingly, the Court will apply New Jersey law.

7

minutes and was informed that she would have a shipping label sent to her to return the modem. (Massand Decl., Ex. E, ECF No. 27-7 at 62:4-10, 68:2-20). Thereafter, Plaintiff received the second modem, which also "sounded like something was broken in it" and when she went to turn the modem on, "it did[] [not] work at all." (*Id.* at 66:15:19). Plaintiff again called Infinite for support and another employee told her to send the modem back and they would fix it and send it back. (*Id.* at 74:15-19).

The Court recognizes that Plaintiff's issues with the modems could also fall within "a dispute relating to the quality of property or services" that she accepted. 12 C.F.R. § 226.13, Supp. I cmt. 13(a)(3)(1)(ii) (effective May 14, 2024) (emphasis added). As discussed *supra*, Plaintiff testified that she requested to return the modems because they did not work. However, the documentation Infinite submitted in support of its challenge of the Disputed Charge indicated the modems were in "good working order" when they were sent to Plaintiff and the shipping fees were the responsibility of Plaintiff. (DSOF ¶¶ 7-10).

For purposes of summary judgment and viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff has created a triable issue of fact as to whether there was a billing error. Nevertheless, this does not end the inquiry of the viability of Plaintiff's claim and is not dispositive for purposes of summary judgment as Plaintiff must still demonstrate Defendant failed to comply with the procedural requirements of the FCBA.

### B. **Whether Defendant Complied with the Procedural Requirements of the FCBA**

Notwithstanding the foregoing, Defendant is entitled to summary judgment because no genuine issue of triable fact exists on whether Defendant complied with the FCBA's procedural requirements. If a creditor identifies a billing error within sixty days after a statement is issued

and satisfies the FCBA's procedural notice requirements, pursuant to Section 1666(a)(3)(A), a creditor has two obligations:

> First, within 30 days of receiving that written notice, it must acknowledge receipt to the consumer in writing. 15 U.S.C. § 1666(a)(3)(A). Second, within two billing cycles and "in no event later than ninety days" after the consumer files his written dispute, it must either (1) "make appropriate corrections" to the consumer's account, "including the crediting of any finance charges on amounts erroneously billed," or (2) "conduct[ ] an investigation" into the dispute and "send a written explanation" to the consumer "setting forth to the extent applicable the reasons why the creditor believes the account . . . was correctly shown in the statement." *Id.* at 15 U.S.C. § 1666(a)(3)(B)(i)-(ii). The creditor must take these steps "before making any attempt to collect the disputed amount."

*Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 433-34 (3d Cir. 2018) (citing *American Express Co. v. Koerner*, 452 U.S. 233, 234 (1981)); *see Piller v. JPMorgan Chase Bank*, No. 20-2248, 2020 WL 8186165, at *3 (D.N.J. Oct. 23, 2020).

After Plaintiff initiated her billing dispute on or about July 15, 2022, Defendant sent Plaintiff a letter dated July 19, 2022, indicating that it was working on her claim and asking her to "send any information that [she] may have to support [her] dispute in the next 10 days." (DSOF ¶¶ 4-5; PRSOF ¶¶ 4-5; Ruiz Decl., Ex. 4, ECF No. 27-12 at 1). In an August 4, 2022 letter, Defendant then advised Plaintiff that it was temporarily crediting her account while it worked with Infinite to investigate her dispute. (DSOF ¶ 6; PRSOF ¶ 6). Thereafter, Infinite submitted documentation to Defendant in support of its position that (i) Plaintiff had failed to return the modems in accordance with the company's fourteen-day return policy, (ii) Plaintiff was responsible for the shipping fees, and (iii) the modems were in "good working order" when they were sent to Plaintiff. (DSOF ¶¶ 7-10). In a September 5, 2022 letter, Defendant advised Plaintiff that Infinite had responded to the dispute and it would advise her if additional information in support of the Disputed Charge was needed in the future. (*See* Ruiz Decl., Ex. 6, ECF No. 27-14). Thereafter, Defendant sent Plaintiff a letter dated September 23, 2022, requesting Plaintiff submit

9

additional documentation in support of the Disputed Charge by October 3, 2022, and if no additional documentation was submitted, the investigation would be closed, and Plaintiff would be rebilled for the Disputed Charge. (Ruiz Decl., Ex. 7, ECF No. 27-15). In an October 4, 2022 letter, Defendant informed Plaintiff that it had completed its investigation and since it had not received additional documentation explaining how the merchandise was defective, Defendant was unable to further pursue the dispute. (Ruiz Decl., Ex. 8, ECF No. 27-16 at 1-2). The letter further advised Plaintiff that she would be rebilled the Disputed Charge on her monthly statement. (*Id.* at 2). Thus, Defendant complied with its § 1666(a)(3) obligations to acknowledge the dispute within thirty days of receiving written notice of the dispute, and to investigate and give a written explanation of the dispute within ninety days of receiving written notice of the dispute.

In an effort to defeat summary judgment, Plaintiff disputes the adequacy of Defendant's investigation and contends she "has shown facts that, taken as true, allow the reasonable inference that [Defendant]'s investigation was not 'reasonable' and that [Defendant]'s disposition of the billing error claim did not rest on a determination that the modems were accepted by Plaintiff and delivered as promised." (Opp'n at 15-16). However, this argument goes against the core principles of the FCBA:

> [T]he FCBA provides a "safe harbor"—the creditor need only make a reasonable attempt to construe the consumer's complaint, investigate the claim so construed, and report back to the consumer within 90 days as to the merit of this apparent claim. There is, in other words, no penalty for "wrong guesses" made in good faith; the federal statute establishes only the procedural framework for dispute resolution, and does not concern itself with the substantive outcome of this process.

*Burnstein v. Saks Fifth Ave. & Co.*, 208 F. Supp. 2d 765, 775 (E.D. Mich. 2002), *aff'd sub nom. Conn-Burnstein v. Saks Fifth Ave. & Co.*, 85 F. App'x 430 (6th Cir. 2003) (per curiam); *see also Piller*, 2020 WL 8186165, at *3 (concluding allegations that the defendant "refused to provide the protections they are required to provide," "concealed information," and "misrepresented the

10

investigation it undertook," did "not suggest a failure to comply with Section 1666's procedural requirements"). As such, the Court rejects Plaintiff's argument regarding the adequacy of Defendant's investigation as it reflects disagreement with the outcome.

Plaintiff further contends that Defendant "cannot rely upon Plaintiff's failure to respond to [the September 23, 2022] letter, one which she never received, to deny her claim." (Opp'n at 16-17). Regarding investigations of billing errors in general, the implementing regulation commentary states:

> A creditor must conduct a reasonable investigation before it determines that no billing error occurred or that a different billing error occurred from that asserted. In conducting its investigation of an allegation of a billing error, the creditor may reasonably request the consumer's cooperation. The creditor may not automatically deny a claim based solely on the consumer's failure or refusal to comply with a particular request, including providing an affidavit or filing a police report. However, if the creditor otherwise has no knowledge of facts confirming the billing error, the lack of information resulting from the consumer's failure or refusal to comply with a particular request may lead the creditor reasonably to terminate the investigation. The procedures involved in investigating alleged billing errors may differ depending on the billing error type.

12 C.F.R. § 226.13, Supp. I cmt. 13(f)(3) (effective May 14, 2024). In support of its contention, Plaintiff relies entirely on the language prohibiting Defendant from "automatically deny[ing] a claim based solely on the consumer's failure or refusal to comply with a particular request." (*See* Opp'n at 16-17). The plain language of Defendant's October 4, 2022 letter clearly refutes this proposition, however, as it provides: "We've thoroughly reviewed the details of your dispute(s), and based on the information we received, we're unable to pursue your dispute(s) further." (Ruiz Decl., Ex. 8, ECF No. 27-16 at 1). Plaintiff has not pointed to any evidence that Defendant automatically denied Plaintiff's claim *solely* due to her failure to respond to the September 23, 2022 letter. As such, the Court rejects this argument.

Because Plaintiff has failed to create a triable issue of fact whether Defendant complied with its obligations under the FCBA, her FCBA claim fails.[5]  Accordingly, the Court grants summary judgment in favor of Defendant.

## IV. **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment (ECF No. 27) is **GRANTED**, and the Complaint (ECF No. 1) is **DISMISSED with prejudice**.

An appropriate Order accompanies this Opinion.

DATED: 12/5/2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge

---

[5] Moreover, to the extent Plaintiff asserts she failed to receive a copy of the September 23, 2022 letter (*see* Opp'n at 16-17; PRSOF ¶¶ 13-14), that does not alter the Court's finding that Defendant complied with its obligations under the FCBA.  15 U.S.C. § 1666(a)(3) requires the creditor, upon receipt of the written notice of dispute, to "*send* a written acknowledgement thereof to the obligor" and "*send* a written explanation or clarification to the obligor." (Emphasis added).  "The plain language of that statute requires only that the creditor send the required acknowledgement and explanation; it does not require that the creditor confirm receipt by the obligor." *Schott v. Am. Express Co.*, No. 17-149, 2019 WL 1495304, at *8 (D.N.J. Jan. 4, 2019).  Plaintiff has not pointed to any evidence that Defendant did not actually mail the September 23, 2022 letter to her or that it sent it to an incorrect address.  As such, the Court finds Defendant complied with its obligations under the FCBA.